IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 23, 2003

## DAVID WILLIAM SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C44,768     R. Jerry Beck, Judge**

**No. E2003-00655-CCA-R3-PC**
**January 9, 2004**

The petitioner, David William Smith, appeals the Sullivan County Criminal Court's denial of his petition for post-conviction relief from his five convictions for attempted second degree murder and resulting effective thirty-two-year sentence as a Range II, multiple offender. He contends that he received the ineffective assistance of counsel because his trial attorney failed to (1) cross-examine state witnesses on testimony conflicting with their prior testimony, (2) advise him that he could receive consecutive sentences, and (3) call the necessary witnesses. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

John D. Parker, Jr., Kingsport, Tennessee, for the appellant, David William Smith.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the petitioner's attempted killing of five police officers on November 28, 1995. The record reflects that after two hung juries, the petitioner was convicted of five counts of attempted second degree murder in his third trial. This court affirmed his convictions. See State v. David William Smith, No. 03C01-9809-CR-00344, Sullivan County (Tenn. Crim. App. Feb. 24, 2000). He timely sought post-conviction relief, alleging ineffective assistance of trial counsel. The post-conviction court denied his petition and this appeal followed.

We summarize the pertinent facts from our opinion in the direct appeal. Dennis Marvin Banks, a police officer in the Bristol Police Department, testified that while on duty November 28,

1995, he received a call to go to 2207 Anderson Street in Bristol, Tennessee, to look for Kelley Phillips, a teenage female runaway. Phillips was found at that address and taken by Banks to his patrol car to be taken to the police station. After receiving permission from the police, Phillips' boyfriend, the petitioner, kissed her inside the police car. After the kiss became "very prolonged," Banks tried to restrain the petitioner. The petitioner began pushing Banks to try to get into the car with Phillips. As he was forced to the rear of the police car, the petitioner said he was a third degree black belt in karate and that he could "take out" the police officers any time he wanted. Officer Banks testified that he smelled a faint odor of alcohol on the petitioner but that there was nothing in the petitioner's actions as he walked or spoke that caused Banks to believe the petitioner was intoxicated.

As Banks transported Phillips to the police station, he smelled smoke. Phillips told him that she had lit a cigarette. Banks then stopped his car so that he could put the cigarette out. After stopping, Banks saw the petitioner walking toward them, although he was not coming from the direction where he had last seen the petitioner. The petitioner approached Banks and again said that he could "take them out" at any time he wanted. Banks believed the petitioner was serious and his supervisor called for assistance at that point. Officer Keith Feathers, Lieutenant Steve Terry, and Lieutenant Fred Overbey, police officers in the Bristol Police Department, arrived in separate cars. The petitioner was told to leave the area, and he walked away into the dark. Officer Lloyd Heaton arrived in his police car just after the petitioner left. Heaton parked his car last in the line of police cars and left his emergency lights on. David Metzger, the transportation planning engineer for the cities of Bristol, Tennessee, and Bristol, Virginia, testified that there would have been approximately three feet of clearance on each side of a car that passed by where the five police cars were parked.

Officer Banks saw a light blue car driving toward them from a nearby alley. He testified that the car's headlights were on but suddenly were turned off. The car's engine raced, and the car began to accelerate. Rather than continue straight down the road, the car swerved directly toward the officers. No officers were injured because they all jumped out of the way in time to avoid the oncoming car. Feathers jumped into his patrol car and pursued the light blue car. The car's headlights came on as Feathers began his pursuit. As he chased the car, he activated his siren and emergency lights. The chase ended when the blue car hit two telephone poles. Feathers testified that the car he chased was registered to the petitioner. When Feathers reached the car, he temporarily detained Jon McGuire, who was standing by the passenger door of the petitioner's car. Officer David Kirkpatrick, a police officer in the Bristol Police Department, testified that after the accident, he saw the petitioner walking toward 2207 Anderson Street and that the petitioner ran when he ordered the petitioner to stop. Kirkpatrick testified that once he and other officers caught the petitioner, he resisted their attempts to handcuff him. After taking the petitioner into custody, Feathers transported him to the police station. The petitioner told Feathers that he drank one shot of vodka at about 3:00 p.m. and that he wanted to take a breathalyzer test. The petitioner did not appear to be intoxicated and did not have an odor of an intoxicant, but he registered a .12 percent blood alcohol level on the breathalyzer test.

Officer Greg Leek, a police officer in the Bristol Police Department, testified that he took the petitioner to the Bristol Regional Medical Center and then returned him to the jail. The petitioner asked what were the charges, and Leek said he would probably be charged with attempted murder. The petitioner replied that that was "bullshit" and that he could have run them all down if he had wanted to.

Donald Carl Smith, Jr., the older brother of the petitioner, testified that he drove past the location where the officers had stopped with the petitioner's girlfriend and had a short conversation with the petitioner. He said the petitioner was exhibiting "classic symptoms" of intoxication. He testified that the petitioner wears eyeglasses but was not wearing any that night. Lieutenant George Eden of the Bristol Police Department, however, testified that he saw the petitioner driving without glasses on another occasion.

At the post-conviction evidentiary hearing, the petitioner testified that his trial attorney told him that if he was convicted at trial, he would receive a maximum sentence of between twelve and twenty years. He said he was pleased with his attorney's representation in his first two trials, but he thought the attorney rushed through the third trial. He said the attorney should have called Jon McGuire and his father, Donald Smith, Sr., as witnesses in the third trial as he did in the second trial.

The petitioner testified that his attorney should have cross-examined witnesses more thoroughly on their inconsistent testimony. He said Officer Overbey testified that the petitioner's headlights were off in the first and second trials but said they were on and then went off in the third trial. He said Officer Overbey testified in the first trial that he could identify the petitioner as the person who tried to hit them with the light blue car but testified in the third trial that he could not identify the driver of the car. The petitioner said Officer Kirkpatrick testified that in the first two trials he saw the petitioner after the accident but that in the third trial, he testified that he saw "them." He said that his attorney questioned the officers about these discrepancies but that he was not satisfied with the cross-examination. He said that the attorney also should have questioned Officer Kirkpatrick as to why he did not arrest him when he told the officers that he could "take them out" any time he wanted. He said that the attorney should have emphasized that the petitioner was not wearing glasses that night and that he needed glasses to see when he drove. The petitioner said he believed his attorney should have called an expert to testify as to the impact of a .12 blood alcohol level on a person's driving ability.

On cross-examination, the petitioner testified that he had four convictions for aggravated burglary and three convictions for theft of property valued more than one thousand dollars. He said that he was not driving his car when it almost hit the police officers and that Jon McGuire and a friend of McGuire's were in the car at that time. He denied telling McGuire to lie to the police by telling them that his friend was driving the car, not the petitioner. He acknowledged that he did not remember if his attorney called McGuire to testify in the first two trials. He stated he knew McGuire made the following statement to the police:

> [The petitioner] hit the gas and sped on driving right for the policemen. He yelled to me to hold on and I was screaming at him to stop and that he was crazy. I saw the Officers jump out of the way of David's speeding vehicle. I would estimate David to be going about forty (40) miles per hour when he tried to hit the cops. I fully believe that had the Police Officers not reacted so quickly and jumped back to safety that David would have struck them with his car.

He said, however, that he still believed his attorney should have called McGuire to testify.

The petitioner acknowledged that his father was not at the scene of the crime, but he believed that his father should have testified because he might have heard something on his scanner or while he was waiting at the jail. He denied that his attorney ever told him that he could be ordered to serve his sentences consecutively. He acknowledged that he rejected the state's offer to plead to a lesser charge and said he wanted to go to trial to prove his innocence. He said he did not want to plead guilty because he did not commit the crime. He said, however, that if he had known he was going to be sentenced to more than twenty years, he would have pled guilty. He said that his attorney met with him many times, that he was a thorough lawyer, but that he did not spend enough time on the third trial.

Donald Carl Smith, Sr., the petitioner's father, testified that his son's attorney discussed with him the possible sentences the petitioner could receive if he was convicted, and he believed the attorney told him that sixteen to twenty years was the maximum. He said he did not testify in any of the petitioner's three trials. He acknowledged that after the petitioner was convicted, he sent the attorney a card that stated "'thanks for the great job in my son's case. I know you gave a hundred and ten percent (110%) because . . . you really cared.'" On redirect examination, Smith stated that he did not remember if he sent the card after the first or third trial.

Donald Carl Smith, Jr., the petitioner's brother, testified that the petitioner's attorney told him that the maximum sentence that the petitioner could receive would be twenty years. He said that he testified in all three trials and that in the third trial, he was "let loose [by the attorney] to make my mistakes[.]" On cross-examination, he said that the attorney never told him that the sentences could be ordered to be served consecutively if the defendant was convicted, but he acknowledged that he did not remember the exact words when told that the petitioner's maximum sentence would be twenty years.

Laural Dean Smith, the petitioner's mother, testified that she was present at the first two trials but did not testify and that she was asked by the attorney to wait outside the courtroom during the third trial. She said she never asked McGuire to lie to the police on her son's behalf. She said the attorney did not cross-examine witnesses sufficiently during the third trial. On cross-examination, she acknowledged that she took McGuire to visit the petitioner at the county jail, but she denied that the petitioner asked McGuire to say a third person was driving his car on the night of the incident.

The petitioner's trial attorney testified that his strategy in the petitioner's three trials was to show that the petitioner would not have intended to hit the police officers because the petitioner knew his girlfriend, Kelley Phillips, was among them when the incident occurred. He said that he also tried to show that the petitioner was intoxicated and had not worn his glasses when the incident occurred in order to show there was no intent to hit the police officers with his car. He said that using this strategy, the petitioner was acquitted of five counts of attempted first degree murder in the first trial.

The attorney said that he did not use an expert on blood alcohol concentrations because when he talked to Officer Feathers, he determined that Feathers had not followed the correct procedure when he gave the petitioner the test. He said he believed an expert might have pointed this out, raising questions as to whether the petitioner's blood alcohol content was as high as .12 percent. The attorney said the petitioner had never told him that someone else was driving the car. He said that it was his usual practice to explain to his clients the charges they were facing and the amount of time they would spend in jail, including whether consecutive sentencing was a possibility. He said that although he could not remember specifically, he believed he would have informed the petitioner on consecutive sentencing. He said the petitioner was adamant that they should go to trial and not accept any plea offers from the state.

The attorney acknowledged he did not call McGuire to testify. He said, however, after reading the statement that McGuire made to the police, he was not surprised when the state called McGuire to testify in the first trial. He said that he was able to effectively cross-examine McGuire and that the state did not call him to testify in the second or third trials. He said that he did not need to spend as much time in preparation for the third trial because of the information he retained from the first two. He said that the only witness he considered calling to testify but did not was Phillips. He said he ultimately decided against calling her because she would have testified that the petitioner's car came close to the officers' cars which was not helpful to the petitioner.

On cross-examination, the attorney acknowledged Phillips could have testified as to the petitioner's intoxication, but he believed the .12 percent blood alcohol concentration established the petitioner's intoxication sufficiently. He said he did not remember bringing the transcripts from the first two trials to the third trial. He acknowledged that if he had brought them, it might have helped him be more effective in cross-examining the witnesses about their discrepancies from the first two trials. He agreed that Officer Overbey's testimony in the first two trials that he saw the petitioner driving the light blue car while stating in the third trial that he did not see the petitioner driving the car was a material and relevant discrepancy. He said that his cross-examination could have been more thorough if he had questioned the other officers on their discrepancies as well. He said that in the third trial, he had the petitioner's family wait outside the courtroom in case anything unexpected happened at trial that required their testimony.

The trial court denied the petition for post-conviction relief. The trial court concluded that the petitioner did not receive the ineffective assistance of counsel, finding that the discrepancies in the witnesses' testimony from the first two trials and the third were slight and immaterial. The trial

court determined that counsel's failure to cross-examine witnesses about these differences would not have changed the outcome in the case and that the petitioner was not prejudiced.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. T.C.A. § 40-30-110(f) (2003). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

The petitioner contends that counsel was ineffective by failing to cross-examine witnesses on discrepancies in their testimony from the first two trials and the third trial. As noted, the trial court found that the discrepancies in the witnesses' testimony from the first two trials and the third trial were immaterial and would not have affected the jury's verdict. It found that some small discrepancies would be inevitable over the course of three trials and that the petitioner's attorney was not ineffective for failing to cross-examine witnesses about the minuscule variances in witnesses' testimony. The record does not preponderate against this finding.

The petitioner contends that counsel was ineffective because he failed to call significant witnesses to testify, including Donald Carl Smith, Sr., Jon McGuire, and an expert on blood alcohol

concentrations. The petitioner claims that his father should have testified because he might have heard information on a scanner or while he was at jail. When his father testified at the evidentiary hearing, however, he did not state anything to which he could testify that would have been helpful to the petitioner. As to the petitioner's claim that counsel was deficient for failing to call Jon McGuire, the statement that McGuire gave to police directly inculpates the petitioner. In light of this, we will not question counsel's strategic decision not to call McGuire to testify. As to the petitioner's claim that counsel was deficient for failing to call an expert on blood alcohol concentrations to testify, the petitioner failed to present the testimony of a witness that would have testified on blood alcohol concentrations. Without any proof at the post-conviction hearing as to the testimony that a witness would have offered, the petitioner cannot demonstrate that he was prejudiced by the failure of the witness to be interviewed or called on his behalf. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The petitioner has failed to provide any evidence that his attorney was deficient for failing to call material witnesses.

The petitioner contends that counsel was ineffective because he misadvised the petitioner on the length of sentence the trial court could impose. Implicit in the post-conviction court's rejection of the petition is that it did not believe the petitioner was entitled to relief based on his claim that counsel was ineffective by not explaining the possibility of consecutive sentencing to the petitioner. We believe that the petitioner's claim that counsel did not tell him he could be ordered to serve consecutive sentences was not proven at the evidentiary hearing. Although the petitioner and his family testified that they were never informed about consecutive sentencing, counsel said he was aware that the petitioner could receive consecutive sentences and that it was his practice to explain sentencing possibilities fully with his clients. He said he did not believe he would have misadvised the petitioner in this case. The evidence does not show that counsel did not tell the petitioner about the possibility of being sentenced consecutively.

In any event, the petitioner has failed to show that but for his attorney's alleged failure to tell him that he could receive consecutive sentences, he would have pled guilty, thereby establishing prejudice. The petitioner's testimony at the post-conviction hearing reflects that he wanted to prove his innocence and that he believed that he had a chance to be acquitted on all the charges. In addition, his attorney testified that the petitioner was adamant throughout the three trials about going to trial rather than accepting a plea agreement from the state. Nothing in the record before us dispels the reliability of the attorney's testimony. His testimony and the petitioner's testimony that he went to trial because he did not want to plead guilty to a crime that he did not commit show that the petitioner wanted to go to trial irrespective of the possible sentencing consequences. We hold that the petitioner has failed to show that he received the ineffective assistance of counsel.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE